CV - 11 2594

**FILED**
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y

★ MAY 3 1 2011 ★

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

## SUMMONS ISSUED

LONG ISLAND OFFICE

|  |  |
|---|---|
| STEVEN BRANDSTETTER,<br>an individual. | Civil Action No.: |
|  | ~~SEYBERT, J.~~ |
| Plaintiff, | (Fraud and Conspiracy) |
|  |  |
| v. | COMPLAINT WALL, M.J. |
|  |  |
| BALLY GAMING, INC., a Nevada Corporation,<br>d/b/a BALLY TECHNOLOGIES, INC., | JURY TRIAL DEMANDED |
|  |  |
| and |  |
|  |  |
| INTERNATIONAL GAME TECHNOLOGY<br>and ACRES GAMING, INC.,<br>a Nevada Corporation |  |
|  |  |
| Defendants. |  |

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746
Phone: 516-655-6926

Bally Gaming, Inc.
6601 South Bermuda Road
Las Vegas, NV 89119
Phone: 702-584-7700

International Game Technology and Acres Gaming, Inc.
9295 Prototype Drive
Reno, NV 89521-8986
Phone: 775-448-7777

COMPLAINT 1 of 48

*(left margin, vertical text)* Steven Brandstetter  12 May Hill Lane  Dix Hills, NY 11746

## I.   NATURE OF THIS ACTION

1.      This is an action under N.Y. GBS. LAW § 349 for fraud and conspiracy in the conduct by defendants Bally Gaming, Inc. ("BALLY") and International Game Technology, Inc. ("IGT") and its subsidiaries against plaintiff Steven Brandstetter ("Plaintiff Brandstetter"). This court has supplemental jurisdiction over the state law claims based on Title 28 U.S.C., §1367 and the defendants actions with regards to the United States Patent And Trademark Office under the laws of the United States. This action is to remedy unlawful fraudulent conduct by the defendant's BALLY and IGT against Plaintiff Brandstetter.

2.      Plaintiff Brandstetter asserts that BALLY and IGT together with its subsidiaries Anchor Gaming and Acres Gaming conspired to keep the ideas that Plaintiff Brandstetter put forth in a provisional patent application in September of 1998 with the United States Patent And Trademark Office ("USPTO") out of the casino marketplace. In the provisional patent application filing Plaintiff Brandstetter put forth his ideas for a slot machine to dispense a sweepstakes, lottery or raffle type ticket that would enter the slot player into a casino run drawing that would simulate a lottery drawing.

3.      Plaintiff Brandstetter's provisional patent application ideas were created into a gaming device that was called slot lottery in 2001. Plaintiff Brandstetter together with James Devlin started J&S Gaming, Inc. to commercialize the slot lottery game, which in 2002 became known as Slot-Sweepstakes!™.

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

4.      Plaintiff Brandstetter contends that employees from both BALLY and IGT engaged in interactions with Plaintiff Brandstetter over a several year time period where they knowingly and willfully made false representations to Plaintiff Brandstetter and concealed material facts from Plaintiff Brandstetter, which caused severe economic damage to Plaintiff Brandstetter. Employees from both BALLY and IGT filed patent applications with the United States Patent and Trademarks Office ("USPTO") where they knowingly and willfully failed to include their knowledge of Plaintiff Brandstetter's ideas and the slot lottery and Slot-Sweepstakes!™ games in their prior art disclosures. BALLY and IGT's actions kept Plaintiff Brandstetter out of the slot machine marketplace which hurt the competitive marketplace, thus causing casinos to have fewer choices and to ultimately pay higher prices for the defendant's products. Upon information and belief, BALLY now has a slot machine gaming system called Bally Power Sweepstakes and IGT has a system within their IGT Advantage suite of products that replicate the play of the ideas put forth by Plaintiff Brandstetter in his 1998 provisional patent application and the slot lottery and Slot-Sweepstakes!™ games.

5.      Plaintiff Brandstetter contends that Robert Miodunski, Mickey Roemer, Richard Schneider, Scott Boyd and possibly others conspired to keep the slot lottery and Slot-Sweepstakes!™ games out of the slot machine marketplace to enable BALLY and IGT to own and control similar intellectual property. Plaintiff Brandstetter contends that he has been financially injured by the alleged fraud and conspiracy of the defendants contained in this Complaint.

6.      Plaintiff Brandstetter contends that the competitive marketplace for slot machines was hurt because the Sweepstakes!™ game  was a lower costs alternative to bonus games BALLY and IGT now have in the casino marketplace.

COMPLAINT 3 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

7.     Plaintiff Brandstetter contends that IGT engineer Scott Boyd and BALLY vice president Mickey Roemer knowingly and willfully made false representations to Plaintiff Brandstetter and concealed material facts to induce Plaintiff Brandstetter and J&S Gaming, Inc. to spend in excess of $460,000.00 (four-hundred and sixty thousand dollars) and years developing the slot lottery and Slot-Sweepstakes!™ games, when in fact they had no intentions of ever doing a legitimate business deal with Plaintiff Brandstetter or J&S Gaming, Inc.

8.     Plaintiff Brandstetter contends that during the several years of time it took developing the slot lottery and Slot-Sweepstakes!™ games, Scott Boyd, Mickey Roemer and others filed patent applications to claim ownership of ideas similar to those put forth in the provisional patent application that Plaintiff Brandstetter sent to the USPTO in 1998. The conduct of Scott Boyd and Mickey Roemer with regard to the Plaintiff Brandstetter was illegal based New York State Laws and the federal fraud statutes. That the motives of Scott Boyd and Mickey Roemer was to enable BALLY and IGT to own or control the intellectual property of Plaintiff Brandstetter. That the alleged fraud by Scott Boyd was concealed by Scott Boyd until it was discovered during his deposition taken March 31, 2009, and that the alleged fraud by Mickey Roemer was concealed until it was discovered during his deposition taken March 30, 2009. That the fraud is ongoing and continuing in the USPTO and in the casino marketplace.

9.     Plaintiff Brandstetter contends that the Sweepstakes!™ game would have produced revenue in excess of $500,000,000.00 (five-hundred million dollars) over its useful life if not for the fraudulent interference by defendants BALLY and IGT.

COMPLAINT 4 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

10.     Plaintiff Brandstetter contends that upon information and belief, defendant BALLY and IGT's subsidiary Acres Gaming, Inc. had a development agreement where Acres would make top box bonus games that would retrofit on top of BALLY machines.

11.     Plaintiff Brandstetter contends that upon information and belief, defendant BALLY had a development agreement with IGT's subsidiary Anchor Gaming.

12.     Plaintiff Brandstetter contends that on September 24, 1999 defendants BALLY and IGT had entered into an agreement to cross-license patents that promote cashless gaming as shown by the online document hereto attached as <u>EXHIBIT 1</u>. These patents cover certain technology and methods that equip gaming devices (slot machines) and systems with cashless features.

13.     Plaintiff Brandstetter contends that by combining their intellectual property for cashless gaming promotions and by having joint development agreements in place, defendants BALLY and IGT show that they do not intend to compete with each other over cashless gaming promotions. The combining of their intellectual property and joint development efforts promoted a corporate culture and a strong motive to use whatever means necessary to own or control the intellectual property of Plaintiff Brandstetter and J&S Gaming, Inc.

14.     Plaintiff Brandstetter contends that the slot lottery and Slot-Sweepstakes!™ game tickets are a form of cashless gaming promotions.

COMPLAINT 5 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

## II. PARTIES

15.     Steven Brandstetter is an individual who resides in New York. He is the original inventor of a slot machine game that was called slot lottery. Steven Brandstetter is a party in this lawsuit. Steven Brandstetter and James Devlin are the principal owners of J&S Gaming, Inc. which developed the Slot-Sweepstakes!™ casino game which made its debut at the Castaways Casino in Las Vegas, Nevada in May of 2003. James Devlin and J&S Gaming, Inc. are not parties to this lawsuit.

16.     BALLY is a Nevada Corporation that designs, manufactures, and distributes slot machines and slot systems in the United States and throughout the world. BALLY's headquarters is located in Las Vegas, Nevada.

17.     IGT is a Nevada Corporation that designs, manufactures, and markets slot machines and slot systems in the United States and throughout the world. IGT's headquarters is located in Reno, Nevada. Anchor Gaming and Acres Gaming, Inc. were acquired by IGT in 2001 and 2003 respectively.

18.     Robert L. Miodunski served as Chief Executive Officer and President of Bally Gaming, Inc. until about September of 2004. Mr. Miodunski has served as a consultant to Bally Technologies, Inc. (formerly, Alliance Gaming Corp.) since September 30, 2004. From 1994 until 2002, Mr. Miodunski served as president of United Coin Machine Company (UCMC), a subsidiary of Alliance Gaming.

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

19.     Mickey Roemer served as the Senior Vice President of Sales and Product Development at Bally Gaming, Inc. from 2000 until 2007.  From 1997 through 2000, Mr. Roemer was the Senior VP and General Manager at Anchor Gaming. From 1984 through 1997, Mr. Roemer worked in various positions at defendant IGT including Vice President of Marketing.

20.     Alfred H. Wilms was on the board of directors at Bally Gaming, Inc. and was the company's largest shareholder at least until 2003. Mr. Wilms served as Chief Executive Officer of Alliance Gaming from  December 1984 to July 1994 and as Chairman of the Board  of Alliance Gaming from August 1986 to July 1994 .

21.     Richard J. Schneider joined IGT in 2003. From 1997 to 2003 Mr. Schneider served as President and Chief Operating Officer in addition to other management positions at Acres Gaming, prior to IGT's acquisition of Acres in 2003. Prior to his service at Acres and IGT, Mr. Schneider served as Vice President of Game Development for CDS (Casino Data Systems) and Director of Engineering for United Coin Machine Company (UCMC), a subsidiary of Alliance Gaming.

22.     Scott Boyd has been an engineer at IGT from 2003 to at least 2009 and may still currently be working at IGT. Scott Boyd worked as an engineer for Acres Gaming from April of 1998 until IGT's acquisition of Acres in 2003. From 1994 through 1998 Mr. Boyd worked for CDS (Casino Data Systems). From 1992 through 1994 Mr. Boyd worked for United Coin Machine Company (UCMC), a subsidiary of Alliance Gaming.

23.     Upon information and belief, Robert Miodunski, Alfred Wilms, Richard Schneider,

COMPLAINT 7 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

and Scott Boyd all worked together for some portion of 1992 through 1994 at United Coin Machine

Company (UCMC), a subsidiary of Alliance Gaming. Alliance Gaming eventually acquired Bally

Gaming which is now known as Bally Technologies, Inc.

### III.   JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction under Title 28 U.S.C., §1331. This Court is

the proper venue and has jurisdiction under Title 28 U.S.C., §1332 because the amount in dispute is

more than $75,000.00 and there is diversity of citizenship among the parties. This court is the proper

venue because the violations presented herein under N.Y. GBS. LAW § 349 allows the plaintiff to

seek civil remedies under the law and Title 18 U.S.C., §1341 allows for Federal remedies for the

actions presented herein. BALLY and IGT both sell their products throughout the United States and

also sell their products in the State of New York. Furthermore, both BALLY and IGT are New York

Stock Exchange (NYSE) members and as such have many analysts and shareholders located locally

that would have a financial interest in attending a trial involving these companies. Also, plaintiffs

business operations are in the State of New York and a substantial part of the events giving rise to

these claims occurred in this judicial district.

### IV.   THE STATUTE OF LIMITATIONS

25.     Defendants knowingly and willfully concealed the alleged fraudulent activity from

Plaintiff Brandstetter and concealed their activity with Plaintiff Brandstetter from the USPTO when

they knowingly and intentionally failed to include Plaintiff Brandstetter's slot lottery devices in the

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

prior art disclosures of their patent applications. It was not until the deposition of Mickey Roemer on March 30, 2009 and the deposition of Scott Boyd on March 31, 2009 that Plaintiff Brandstetter discovered the alleged fraudulent activities of the defendants that is made in this Complaint and that the fraud alleged herein is ongoing and continuing with the USPTO and in the casino marketplace. As stated in 15 U.S.C. § 16(i) (1988); *see Holmberg v. Armbrecht,* 327 U.S. 392, 397 (1946), the running of the statute of limitations may be tolled by the application of the doctrine of fraudulent concealment.

26.     Defendant BALLY's vice president Mickey Roemer knowingly and intentionally concealed from Plaintiff Brandstetter the material fact that he had filed a patent application with the USPTO claiming similar intellectual property to Plaintiff Brandstetter's 1998 provisional patent application filing with the USPTO.

27.     Plaintiff Brandstetter exercised due diligence in its attempt to discover the alleged fraudulent activity of the defendants. Plaintiff Brandstetter attended the annual G2E trade shows in Nevada where the major slot machine manufacturers, including BALLY and IGT, introduce new slot machine games to the public. Plaintiff Brandstetter did not find any slot machines at the trade shows that replicate the slot lottery and Slot-Sweepstakes!™ games.

28.     Plaintiff Brandstetter and James Devlin first discovered a BALLY gaming system at the Monticello Casino and Raceway in June of 2007 that replicates the play of slot lottery and the Slot-Sweepstakes!™ games. A copy of the brochure from the Monticello Casino and Raceway's web site is hereto attached as <u>EXHIBIT 2</u>.

COMPLAINT 9 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

## V. FACTUAL ALLEGATIONS

29.    On or about September of 1998 - Plaintiff Brandstetter and James Devlin were discussing slot machines while at Shea Stadium in Flushing, New York. On the scoreboard they were showing people waiting in lines wrapped around the block of convenience stores just to buy Powerball tickets. Plaintiff Brandstetter asked James Devlin if people would wait in line to play a slot machine if it gave a ticket for a large jackpot. Plaintiff Brandstetter developed his ideas, and designed a drawing of a slot machine with a ticket printer to dispense a sweepstakes, lottery, or raffle ticket.

30.    On or about September 25, 1998 - Plaintiff Brandstetter put forth his ideas and filed for a provisional patent application sent the USPTO. The provisional patent application is titled, "Gaming system that is combined with a sweepstakes, lottery or raffle ticket." and is hereto attached as EXHIBIT 3.

31.    The abstract of the provisional patent states, "A gaming system pays out a bonus to a player whose sweepstakes, lottery, or raffle style ticket matches the winning numbers drawn at a later date. The sweepstakes gaming system will provide five or six numbers chosen at random from a set pool of numbers by the gaming machine and placed on a slip of paper that is generated by the gaming machine after a player has deposited a set number of coins. A numeric counter will be placed on the gaming machine that alerts the player as to the set number of coins he has placed into the machine and when the next sweepstakes, lottery, or raffle ticket will be generated. Once per week, or once per month at a predetermined location the winning numbers will be drawn at random. Players

whose sweepstakes, lottery, or raffle ticket matches the numbers drawn will win the bonus prize. This bonus prize will be generated from a percentage of the total coins placed into all the gaming devices participating. Should more than one player match the winning numbers, they will divide the bonus prize on an equal basis."

32.     On or about October 1998 - Plaintiff Brandstetter sends out a package of his gaming concept to BALLY. BALLY sends a Non-Disclosure Agreement hereto attached as EXHIBIT 4, which Plaintiff Brandstetter signs and sends back with the gaming concepts. Plaintiff Brandstetter never receives the Non-Disclosure Agreement back from BALLY.

33.     On or about October 21, 1998 - Plaintiff Brandstetter receives a reply from the patent office in the form of provisional patent application number 60/105,144 which is attached above as exhibit 3.

34.     On or about November 12, 1998 - Plaintiff Brandstetter puts forth a fax from Ashalee May at BALLY hereto attached as EXHIBIT 5 confirming a conversation that plaintiff's "Gaming Idea" is in the hands of BALLY's Review Committee.

35.     On or about November 18, 1998 - Plaintiff Brandstetter puts forth a fax hereto attached as EXHIBIT 6 from Ashalee May stating that plaintiff's idea is still being reviewed by the Review Committee.

36.     On or about January 5, 1999 - Plaintiff Brandstetter puts forth a fax hereto attached as

COMPLAINT 11 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

EXHIBIT 7 to Morry Goldstein, Defendant BALLY's CEO at that time.

37.    On or about January 6, 1999 - Morry Goldstein faxes a rejection hereto attached as EXHIBIT 8.

38.    On or about January 14, 1999 - BALLY mails a rejection letter signed by Ashalee May assistant to Monica Finta. The letter states, "Thank you for your submission of the 'Sweepstakes' game, slot-lottery gaming idea, and the putting green game combo. Our New Product Development Preliminary Review Committee has reviewed your submissions and has voted to reject them for further consideration by BALLY. Accordingly, I am returning all your submissions." This letter is hereto attached as EXHIBIT 9.

39.    On or about April 1999 - Plaintiff Brandstetter sends the gaming ideas put forth in the 1998 provisional patent filing of a slot machine dispensing a sweepstakes, lottery. or raffle ticket for a casino run drawing to Randy Adams at Anchor Gaming.

40.    On or about April 16, 1999 - Anchor Gaming sends a rejection letter on behalf of Randy Adams. It is signed by Mark Hettinger and hereto attached as EXHIBIT 10.

41.    Plaintiff Brandstetter contends that Anchor Gaming misappropriated the idea of a "Gaming system that is combined with a sweepstakes, lottery or raffle ticket." from Plaintiff Brandstetter's provisional patent when on September 5, 2000 Anchor filed patent application number 09/655,251. This '251 patent application claims the dispensing of tickets for a drawing from a

COMPLAINT 12 of 48

gaming device. Anchor fails to disclose to the USPTO what Plaintiff Brandstetter submitted to Anchor Gaming as prior art to the '251 patent application. Claim [0010] of Anchors '251 patent application specifically states, "As used herein, the term 'drawing' is meant to broadly include lotteries, sweepstakes, and other random selections,"

42.     On or about May 10, 1999 - Plaintiff Brandstetter purchases web address www.slot-lottery.com as shown in the document hereto attached as EXHIBIT 11.

43.     On or about June 1999 - Plaintiff Brandstetter files for a trademark on the name Slot-Lottery! as shown in the document hereto attached as EXHIBIT 12.

44.     On or about July 2, 1999 - Plaintiff Brandstetter creates web space for www.slot-lottery.com.

45.     On or about October 8, 1999 - Plaintiff Brandstetter sends a letter via FedEx to Charles Mathewson Chairman of defendant IGT after seeing him on CNBC. There was no reply. An unsigned copy of the letter and the FedEx receipt are hereto attached as EXHIBIT 13 .

46.     On or about January 11, 2000 - Plaintiff Brandstetter purchases web address www.casinosweepstakes.com . Several other web addresses were purchased during 2000.

47.     On or about October 18 to 20, 2000 - Plaintiff Brandstetter and James Devlin attend the World Gaming Congress and Expo 2000. A photo of the badge from the show is hereto attached

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

as EXHIBIT 14.

48.    On or about October 18 to 20, 2000 - Plaintiff Brandstetter and James Devlin meet Scott Boyd the Acres Gaming Senior Software Engineer at the Acres Gaming booth. Scott Boyd gives Plaintiff Brandstetter his business card, a copy of which is hereto attached as EXHIBIT 15. Scott Boyd shows Plaintiff Brandstetter and James Devlin a musical cherry game and several other Acres top box games on top of BALLY slot machines. Scott Boyd gives Plaintiff Brandstetter a brochure hereto attached as EXHIBIT 16 showing a top box that Acres Gaming has designed for BALLY Gaming machines. Plaintiff Brandstetter and James Devlin talk with Scott Boyd for a while about slot lottery and Plaintiff Brandstetter leaves a pamphlet with Scott Boyd.

49.    On or about November 2000 - James Devlin corresponds with Scott Boyd by phone. Scott Boyd explains to James Devlin that Acres Gaming has a development agreement with BALLY Gaming. James Devlin tells Scott Boyd he speaks with Alfred Wilms, BALLY's largest shareholder and former BALLY CEO.  Scott Boyd informed James Devlin that he worked with Afred Wilms, Robert Miodunski, and Richard Schneider when he was at United Coin Machine Company. Scott Boyd tells James Devlin that he should use his connection with Alfred Wilms to get BALLY's CEO Bob Miodunski to call over to Acres Gaming to put "slot lottery" into the BALLY/Acres joint venture. Scott Boyd explains that this will speed up the development process. At that point, Scott Boyd will build the slot lottery game at Acres Gaming.

50.    On or about November 14, 2000 - James Devlin sends a fax hereto attached as EXHIBIT 17 to Alfred Wilms at fax number (011) 232-231-1810. This fax explains the

COMPLAINT 14 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

conversations to Alfred Wilms that James Devlin had with Scott Boyd with regards to slot lottery. James Devlin requests that Alfred Wilms contact BALLY's president Robert Miodunski and ask him to put the slot lottery game into the BALLY/Acres joint venture.

51.    On or about November 17, 2000 - James Devlin sends Alfred Wilms an email with a link to the Nevada Revised Statutes with regards to how lotteries are defined under NRS 462.105. It appears that Alfred Wilms forwarded this email he received to Robert Miodunski at BALLY Gaming as shown in exhibit 18 below.

52.    On or about November 23, 2000 - James Devlin and Plaintiff Brandstetter receive an email from Robert Miodunski, BALLY's President and CEO, hereto attached as <u>EXHIBIT 18</u>. This email states, "I talked to Jim last week and he is working out a patent infringement issue with Randy Adams. We are going to develop this in conjunction with acres Gaming who we are working on other projects."

53.    Plaintiff Brandstetter contends that this email from Robert Miodunski suggests that communications had occurred between Robert Miodunski and Acres Gaming and that Robert Miodunski concluded that BALLY was going to develop the slot lottery game with Acres.

54.    Plaintiff Brandstetter contends that this email from Robert Miodunski also suggests that the "patent infringement issue with Randy Adams" that Miodunski states in his email refers to Randy Adams patent number 6,113,098 titled, " Gaming device with supplemental ticket dispenser ".

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

55.     On or about December 3 to 6, 2000 - Plaintiff Brandstetter and James Devlin travel to Las Vegas to attend the BALLY annual shareholder meeting and to speak with Scott Boyd. Robert Miodunski meets very briefly with James Devlin and Plaintiff Brandstetter after the shareholder meeting and informs them that he will contact them at a later date to discuss the slot lottery game.

56.     Scott Boyd meets Plaintiff Brandstetter and James Devlin in their room at the Excalibur Hotel. Scott Boyd proceeds to tell them that Rich Schneider, Acres Gaming's president won't do Plaintiff Brandstetter's slot lottery game at this time because Acres Gaming can't afford a patent battle with Randy Adams, but that Acres has some large contracts they expect to win. Scott Boyd informs Plaintiff Brandstetter and James Devlin that having a game in the market is better than just filing a patent. Scott Boyd says he will develop the slot lottery game for $20,000.00 and get it approved with Nevada Gaming, and when Acres has the money to fight Randy Adams, Plaintiff Brandstetter can throw the slot lottery game into the BALLY/Acres joint venture. Scott Boyd hands Plaintiff Brandstetter a "Slot Lottery Development Plan" which Scott Boyd typed up. Scott Boyd explains in detail to Plaintiff Brandstetter and James Devlin how he will build the slot lottery game in 30-45 days, and that he will get it approved as associated equipment with Nevada Gaming Control Board (GCB). Scott Boyd's cell phone number (702) 460-6660 shows up 3 times on Plaintiff Brandstetter's hotel bill dated December 6, 2000 from the Excalibur hereto attached as EXHIBIT 19.

57.     Scott Boyd testified at his deposition that he had given Plaintiff Brandstetter and James Devlin a "Slot Lottery Development Plan" hereto attached as EXHIBIT 20 that he had written up for his proposal to Plaintiff Brandstetter.

58.     Scott Boyd states in writing in this Slot Lottery Development Plan that, "The prototypes will be considered complete when they have achieved Associated Equipment approval by the Nevada Gaming Control Board (GCB) for use on the casino floor."

59.     Plaintiff Brandstetter asserts that Scott Boyd knowingly and intentionally concealed his true motives from Plaintiff Brandstetter because he knew he would never send anything to the Nevada Gaming Control Board.

60.     Plaintiff Brandstetter alleges fraudulent concealment by Scott Boyd with proof of Scott Boyd's true intentions found on pages 124 and 125 of his deposition hereto attached as EXHIBIT 21.  The key statements from Scott Boyd's March 31, 2009 deposition are shown below:

MS. GARBAR:   Thank you.  Let's move on. Mr. Boyd, were you supposed to have any role in trying to obtain approval from the Nevada Gaming Control Board for plaintiffs' device?

MR. BOYD:     My role was advisory.  I could not submit a device for approval as stated earlier, nor could I participate or be publicly named in any submission but I could advise or it was my intention to advise for successful approval.

MS. GARBER:   Okay.  Now what were you going to send to Nevada Gaming Control Board on behalf of plaintiffs?

MR. BOYD:     Nothing.

MS. GARBAR:   You weren't going to send them anything?

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

MR. BOYD:      No, there is no way I could have done that.

MS. GARBAR: Why not?

MR. BOYD:      No. 1, is that I was not a licensed gaming manufacturer. No. 2 is that it

would have exposed the violation of my employment agreement with Acres.

MS. GARBAR: Anything else?

MR. BOYD:      No.

61.     Richard Schneider testified in deposition taken April 1, 2009 that he was Scott Boyd's boss while at Acres Gaming and that Scott Boyd still reports to him at IGT as of April of 2009. Richard Schneider testified he did not know Scott Boyd had built the slot lottery game and when he found out he was "disappointed". Richard Schneider testified that Scott Boyd violated his employment agreement with Acres. On pages 101 and 102 of his deposition hereto attached as EXHIBIT 22, Richard Schneider testified that Scott Boyd's employment was not terminated, he was not demoted, his pay was not decreased, and his responsibilities were not affected in any way.

62.     Plaintiff Brandstetter asserts that by not disciplining Scott Boyd, defendant IGT is essentially condoning Scott Boyd's interactions with Plaintiff Brandstetter and IGT is condoning Scott Boyd's repeated failures to disclose as prior art the slot lottery game he built for Plaintiff Brandstetter to the USPTO. Scott Boyd and IGT vice-president Richard Schneider are listed as inventors on patent application number 11/081,349 filed March 15, 2005. In this patent application paragraphs 98, 99, and 100 explain a game promotion where a "drawing ticket" is given from the slot machine to a slot player where "At a pre-determined time, a drawing is held for a prize."

63.     On or about December 7, 2000 - Scott Boyd requests an initial payment of

COMPLAINT 18 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

$10,000.00 and then tells Plaintiff Brandstetter to make it $9500.00. Plaintiff Brandstetter sends a certified bank check for $9500.00 from his personal bank account to Scott Boyd via United States Postal Service hereto attached as EXHIBIT 23. Plaintiff Brandstetter sends money orders totaling $1500.00 to Scott Boyd on March 22, 2001 hereto attached as EXHIBIT 24. Plaintiff Brandstetter sends money orders totaling $2500.00 to Scott Boyd on July 18, 2001 hereto attached as EXHIBIT 25.

64.    On or about December 11, 2000 Alfred Wilms, BALLY's largest shareholder, sends an e-mail to James Devlin hereto attached as EXHIBIT 26. This email states, "Dear Jim, We thank you for your email, and (as always) agree with your analysis. We have spoken to Bob Miodunski and asked him to contact you. We will keep you informed. Best personal regards. Alfred Wilms." this email is significant because it confirms a conversation between Alfred Wilms BALLY's Chairman of the Board and Robert Miodunski the President and CEO of BALLY Gaming with regards to the slot lottery game.

65.    On or about December 2000 - After Plaintiff Brandstetter sends the first payment Scott Boyd tells Plaintiff Brandstetter to get an engineer in New York to submit the game to the Nevada Gaming Control Board. Plaintiff Brandstetter hires Computek at Scott Boyd's request. A document from Computek to Plaintiff Brandstetter is hereto attached as EXHIBIT 27. After Scott Boyd speaks with Rishi at Computek, he tells Plaintiff Brandstetter to fire Computek because they are incompetent.

66.    On or about January 2001 - Defendant BALLY's president Bob Miodunski informs

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

James Devlin that he can discuss the slot lottery game with BALLY's vice president Mickey

Roemer. Evidence of a discussion with Mickey Roemer is a United Parcel Service receipt dated

January 18, 2001 for next day delivery, and a copy of the unsigned letter dated January 18, 2001 sent

to Mickey Roemer hereto attached as <u>EXHIBIT 28</u>. The original letter is in the possession of

defendant BALLY. The letter discusses the slot lottery game and the Randy Adams patent that

Robert Miodunski referred to in his November 23, 2000 email to James Devlin. What James Devlin

and Plaintiff Brandstetter to not know is that BALLY's vice president Mickey Roemer was working

on a continuation of this Randy Adams patent (patent number 6,113,098 that is dated September 22,

1998) in an effort to pre-date the provisional patent application Plaintiff Brandstetter submitted to

the USPTO on September 25, 1998.


67.     On or about January 23, 2001, less than a week after his discussions with James

Devlin regarding the slot lottery game, Mickey Roemer signs his "Declaration For Patent

Application" with the online document hereto attached as <u>EXHIBIT 29</u>. This declaration is for patent

application number 09/655,251 which later becomes 10/353,689. These patent applications are filed

as a continuation of Randy Adams patent number 6,113,098. Though Randy Adams 6,113,098

makes no mention of using a ticket for a separate drawing, Claim [0010] of the '251 patent

application specifically states, "As used herein, the term 'drawing' is meant to broadly include

lotteries, sweepstakes, and other random selections,". Mickey Roemer fails to disclose as prior art to

the USPTO  the slot lottery game he was discussing with James Devlin.


68.     On or about January to October 2001 - Scott Boyd builds the slot lottery game. Scott

Boyd introduces Plaintiff Brandstetter and James Devlin to his friend Wadda Alhadithi who


COMPLAINT 20 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

produces the sheet metal for the slot lottery game. Phone records for January 2001, February 2001, March 2001, April 2001, May 2001, June 2001, July 2001, August 2001, September 2001, and October 2001 are hereto attached as EXHIBIT 30. The phone bills show numerous calls to Scott Boyd's cell phone, Scott Boyd's home phone, and his friend Wadda Alhadithi's phone. A February 21, 2001 bill from the Rio Hotel hereto attached as EXHIBIT 31 shows calls to Scott Boyd's cell phone. A May 2, 2001 bill from the Sahara Hotel hereto attached as EXHIBIT 32 shows a call to Scott Boyd's cell phone. These phone records show that there was a long term consistent amount of communication between Scott Boyd and Plaintiff Brandstetter during the many months of development of the slot lottery game.

69.     On or about March 8, 2001 - Scott Boyd faxes to Plaintiff Brandstetter several pages of schematic drawings hereto attached as EXHIBIT 33 for the slot lottery game.

70.     On or about March 27, 2001 - Scott Boyd faxes over more pages of schematic drawings hereto attached as EXHIBIT 34 to Plaintiff Brandstetter.

71.     On or about March 28, 2001 - Scott Boyd faxes over additional pages of schematic drawings hereto attached as EXHIBIT 35 to Plaintiff Brandstetter.

72.     On or about March 29, 2001 - Scott Boyd faxes over more schematic drawings hereto attached as EXHIBIT 36 to Plaintiff Brandstetter.

73.     On or about April 26, 2001 - Scott Boyd gives Plaintiff Brandstetter the final

COMPLAINT 21 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

schematic drawings for the slot lottery game hereto attached as <u>EXHIBIT 37</u>.

74.     On or about May 30, 2001 - Plaintiff Brandstetter sends a bank wire hereto attached as <u>EXHIBIT 38</u> for $5,500.00 to Wadda Alhadithi for hardware parts and to rent slot machines for the slot lottery game.

75.     On or about June 13, 2001 - Plaintiff Brandstetter sends a bank wire hereto attached as <u>EXHIBIT 39</u> to Wadda Alhadithi for $3,500.00 to cover additional development costs for the slot lottery game.

76.     On or about June 2001 - Pictures of Scott Boyd demonstrating an unfinished version of the slot lottery game to Plaintiff Brandstetter are hereto attached as <u>EXHIBIT 40</u>. These pictures were taken in Scott Boyd's garage at 1642 Greystone Canyon Avenue in Las Vegas, Nevada.

77.     On or about August 20, 2001 - Plaintiff Brandstetter and James Devlin file a patent application for a "Coin Counter and Ticket Dispenser for a Game Machine". The patent application number 09/933,067.

78.     On or about October 18, 2001 - Plaintiff Brandstetter and James Devlin file a patent application for a "Gaming Device having a second separate bonusing event". The patent application number is 09/982,437.

79.     On or about October 18, 2001 - Scott Boyd tells Plaintiff Brandstetter that the slot

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

lottery game is completed. The devices dispense cards not tickets. The slot lottery game never gets sent for approval to the Nevada Gaming Control Board as Scott Boyd told Plaintiff Brandstetter he would do. Scott Boyd tells Plaintiff Brandstetter the game is only a "prototype" and to go show it to BALLY Gaming to get it developed. Plaintiff Brandstetter did not pursue getting Scott Boyd to submit the slot lottery game to the Nevada Gaming Control Board because less than 10 days later BALLY's vice president Mickey Roemer was offering Plaintiff Brandstetter and James Devlin a development deal with BALLY provided they (Brandstetter and Devlin) prove that there is a market for the slot lottery game. Plaintiff Brandstetter had no way of knowing that 14 months later, Scott Boyd would file the first of his patent application claiming similar intellectual property to the slot lottery game.

80.    On or about October 20, 2001 - James Devlin contacts BALLY vice president Mickey Roemer.

81.    On or about October 24, 2001 - BALLY vice president Mickey Roemer sends an email hereto attached as <u>EXHIBIT 41</u> that states, "Jim Devlon I checked out the site. Looks interesting. Let me know when you in Vegas  Mick Roemer Bally Gaming".

82.    Mickey Roemer testified on page 121 of his deposition hereto attached as <u>EXHIBIT 42</u> that he was asked to contact James Devlin by BALLY president  Robert Miodunski.

83.    On or about October 29, 2001 - BALLY vice president Mickey Roemer meets Plaintiff Brandstetter and James Devlin at 6135 Harrison Drive in Las Vegas to see a demonstration

COMPLAINT 23 of 48

of the slot lottery game built by Scott Boyd.

84.     After seeing a demonstration of the slot lottery game by Plaintiff Brandstetter and James Devlin, Mickey Roemer states that the game will never work if it dispenses cards. Mickey Roemer said he can make an offer for what he has seen. He tells Plaintiff Brandstetter and James Devlin that it would be in the "5 figure" range. When Plaintiff Brandstetter and James Devlin say "no thanks", Mickey Roemer says "good".

85.     Mickey Roemer says he can get Plaintiff Brandstetter and James Devlin an engineer that can build the slot lottery game the right way. Mickey Roemer says he knows an engineer he has worked with while he was at Anchor Games who can build the game to BALLY's specifications. He further states that if Plaintiff Brandstetter and James Devlin can prove the concept and get 200 units out there, BALLY will, "take the game away from [Plaintiff Brandstetter and James Devlin]."

86.     Hereto attached as <u>EXHIBIT 43</u> is page 91 of Mickey Roemer's deposition where he testifies, "I may have said we'd (BALLY) be interested if he (Devlin) could prove the idea." when asked about BALLY's interest in developing the slot lottery game.

87.     On or about March of 2002 - Mickey Roemer tells James Devlin about engineer Steven Campbell of Wing Design. Plaintiff Brandstetter and James Devlin fly to Las Vegas, Nevada to meet with Steven Campbell to discuss developing the slot lottery game.

88.     Hereto attached as <u>EXHIBIT 44</u> is page 90 of Mickey Roemer's deposition where he testifies, "I think I did introduce Jim Devlin to Steve Campbell."

COMPLAINT 24 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

89.     What Mickey Roemer fails to disclose to Plaintiff Brandstetter and James Devlin is

that he had filed patent application 09/655,251 on September 5, 2000 making similar intellectual

property claims to Plaintiff Brandstetter's 1998 provisional patent application and the slot lottery

game.

90.     Mickey Roemer testified on pages 124 and 125 hereto attached as <u>EXHIBIT 45</u> at his

deposition taken March 30, 2009 that he did not inform Plaintiff Brandstetter and James Devlin of

his pending patent application with Anchor Gaming.

91.     Plaintiff Brandstetter contends that this intentional misrepresentation of material

existing fact by Mickey Roemer was not discovered by Plaintiff Brandstetter until Mickey Roemer's

deposition. Plaintiff Brandstetter reasonably relied on the fact that as vice-president of BALLY

Gaming, Mickey Roemer was being truthful about doing a development deal with the Plaintiff

Brandstetter and James Devlin, provided Plaintiff Brandstetter and James Devlin build its product

and prove that a market exists for the slot lottery game.

92.     Plaintiff Brandstetter contends that at the time that Mickey Roemer made these

representations, Plaintiff Brandstetter took them to be true. Had Plaintiff Brandstetter known Mickey

Roemer had filed his '251 patent application claiming similar intellectual property, Plaintiff

Brandstetter would not have spent hundreds of thousands of dollars using Mickey Roemer's business

associate Steven Campbell of Wing Design to build the game.

COMPLAINT 25 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

93.    Plaintiff Brandstetter contends that the '251 patent application misappropriates the ideas put forth by Plaintiff Brandstetter to the USPTO in his provisional patent application sent on September 25, 1998 to the USPTO. Plaintiff Brandstetter sent the ideas contained in this provisional patent application filing to Randy Adams at Anchor Gaming in April of 1999. Proof that Anchor Gaming had received Plaintiff Brandstetter's ideas is shown by a letter sent by Anchor Gaming on April 16, 1999 to Plaintiff Brandstetter as shown previously in exhibit 10. The '251 patent application which adds a ticket that allows a slot player to enter a separate drawing was not filed until September 5, 2000.

94.    Plaintiff Brandstetter contends that further evidence of the alleged conspiracy is that fact that the '251 patent application was a continuation in part of the "Randy Adams patent" that Robert Miodunski refers to in his email to James Devlin on November 23, 2000. The Adams patent number is 6,113,098 and it is titled, " Gaming device with supplemental ticket dispenser ". Nowhere in the '098 patent does it state that a slot machine gives a slot player a ticket that would enter him into a separate drawing. It is only in the abandoned '251 patent application and its replacement '689 patent application does it state using a ticket from a slot machine for a separate drawing.

95.    Plaintiff Brandstetter asserts that BALLY president Robert Miodunski must have known at some point that his vice president Mickey Roemer was listed on the '251 patent application claiming intellectual property similar to Plaintiff Brandstetter's provisional patent application and the slot lottery game. On page 76 of Mickey Roemer's deposition hereto attached as EXHIBIT 46, Mickey Roemer testified that BALLY had a joint venture agreement for Wheel of Gold with Anchor Gaming and he believed that there were other development agreements between the two companies.

96.    Plaintiff Brandstetter contends the conspiracy allegations are shown by the fact that

Mickey Roemer's '251 patent application is owned by Anchor Gaming, now Defendant IGT, but he

was vice president at BALLY when he signed his declaration for the patent application on January

23, 2001 which was previously attached as exhibit 28, and during the prosecution of this patent

application.

97.    Plaintiff Brandstetter contends that motive for Mickey Roemer's interactions with

Plaintiff Brandstetter and James Devlin is that fact that the '251 patent application gets abandoned by

IGT sometime in 2002 or 2003 and is replaced with patent application number 10/353,689 with

essentially all of the same claims as the '251 patent application. Plaintiff Brandstetter contends that

Mickey Roemer was never really going to give Plaintiff Brandstetter and James Devlin a

development deal with BALLY, he was just stringing Plaintiff Brandstetter and James Devlin along

until he could properly secure his claims of inventorship with the USPTO.

98.    Defendant BALLY's vice president Mickey Roemer is listed as an inventor on patent

application number 10/353,689 even though the patent is owned by IGT and Mickey Roemer had

been a BALLY employee for over 2 years when the '689 patent application was filed with the

USPTO on January 29, 2003.

99.    Defendant BALLY's vice president Mickey Roemer knowingly and intentionally did

not put the slot lottery game built by Scott Boyd in the prior art disclosure of the '689 patent

application owned by defendant IGT.

COMPLAINT 27 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

100.    Defendant BALLY's vice president Mickey Roemer knowingly and intentionally did

not put the Slot-Sweepstakes!™ game built by engineer Steven Campbell in the prior art disclosure

of the '689 patent application owned by  defendant IGT.


101.    On or about December 20, 2001 - IGT acquires Anchor Games.


102.    On or about January 9, 2002 - Plaintiff Brandstetter sends slot lottery brochures to 8

vice presidents at IGT via registered mail whose receipts are hereto attached as EXHIBIT 47. The

slot lottery brochures were sent to Rick Rowe, Joe Kaminkow, Robert Bittman, Robert McMonigle,

Rich Pennington, Ed Rogich, Ward Chilton, and Jerry Young. Plaintiff Brandstetter sent a slot

lottery brochure to Nikol Abelman at IGT by registered mail hereto attached as EXHIBIT 48.


103.    The brochures sent by Plaintiff Brandstetter to defendant IGT are in the possession of

IGT. A copy of a similar brochure used during that time period by Plaintiff Brandstetter is hereto

attached as EXHIBIT 49.


104.    Plaintiff Brandstetter emailed the 8 Vice Presidents at IGT. Rick Rowe a vice

president at IGT called Plaintiff Brandstetter and asks a few questions about the slot lottery brochure

that he received.


105.    On or about January 25, 2002 - Terrence W. McMillin, Chief Intellectual Property

Counsel at IGT calls and faxes Plaintiff Brandstetter and asks Plaintiff Brandstetter to remove an

image of an IGT machine from the brochure. The fax is hereto attached as <u>EXHIBIT 50</u>. The fax is CC: to Rick Rowe and Joseph Kaminkow who several months later show up on patent applications that have claims that are similar to the descriptions in the slot lottery brochures. The fax is also CC: to Sara Seth Brown, Randy Hedrick, Richard Pennington, Ed Rogich, and Ali Saffari, confirming they received the slot lottery brochure.

106. On or about April 4, 2002 - Rick Rowe is listed as an inventor on patent application number 10/116,680 that issues a ticket from the slot machine for an entry into a drawing. Daryn Kylie, Derrick Price, Laura Hunt, Larry Lewis, and Timothy Moser are listed as inventors on this patent application.

107. Plaintiff Brandstetter contends that though Terrence W. McMillin, the Chief Intellectual Property Counsel at IGT knew of the information contained on the slot lottery brochure as shown by the fax he sent to Plaintiff Brandstetter on January 25, 2002, defendant IGT knowingly and intentionally failed to disclose the slot lottery brochure in the prior art disclosure when patent application number 10/116,680 was filed.

108. On or about September 12, 2002 - Joseph Kaminkow is listed as an inventor on patent application number 10/244,111 where a secondary game or event comprises a drawing, lottery or raffle. The ticket is called a "receipt" in this patent application. Daryn Kiely, Derrick Price, Timothy Moser, and Laura Hunt are listed as inventors on this patent application.

109. Plaintiff Brandstetter contends that defendant IGT knowingly and intentionally failed

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

to disclose the slot lottery brochure in the prior art disclosure when patent application number 10/244,111 was filed.

110. On or about May 2002 - Plaintiff Brandstetter and James Devlin met with Mark Lowell, Vice President of Research and Development at Gametech in Reno, Nevada to discuss Gametech developing the slot lottery game. Also at that meeting is Russell Roth, President of Las Vegas Gaming, Inc. Plaintiff Brandstetter and James Devlin did not know beforehand that Mr. Roth would be at the meeting. Plaintiff Brandstetter signs Non-Disclosure and Non-Use Agreements as president of J&S Gaming, Inc. with both Mark Lowell hereto attached as EXHIBIT 51 and Russell Roth hereto attached as EXHIBIT 52.

111. Plaintiff Brandstetter and James Devlin now call the game Slot-Sweepstakes!™ so that it is not to be confused with the lottery. Plaintiff Brandstetter and James Devlin decided to use Wing Design over Gametech to build the Slot-Sweepstakes!™ game because of Mickey Roemer's statements that Steven Campbell at Wing Design will build it to BALLY Gaming specifications, and that Plaintiff Brandstetter and James Devlin anticipated getting a development deal with BALLY after they proved the market for the game.

112. On or about May 20, 2002 -- Plaintiff Brandstetter as president of J&S Gaming, Inc. enters into an Agreement with Wing Design, Inc. to build the game and get it approved with the Nevada Gaming Control Board.

113. On or about September 2002 - Plaintiff Brandstetter and James Devlin show the Slot-

Sweepstakes!™ game at the Gaming Show in Las Vegas. Mickey Roemer says he is too busy to see the game at the show, but that he will meet with Plaintiff Brandstetter and James Devlin at a later date.

114.    On or about October 2002 - Plaintiff Brandstetter and James Devlin met with Mickey Roemer and Mike Mitchell from BALLY at Steve Campbell's office to discuss the Slot-Sweepstakes!™  game. An October 28, 2002 e-mail from Mickey Roemer to Plaintiff Brandstetter hereto attached as <u>EXHIBIT 53</u> confirms that Plaintiff Brandstetter met with Mickey Roemer. At the office, Mickey Roemer and Mike Mitchell ask why the game doesn't dispense the tickets from the cashless ticket dispenser and that this would prevent the need for two separate printers in the slot machine. At this time Plaintiff Brandstetter and James Devlin didn't know that a dual port thermal micro printer was coming out.

115.    On or about November 12, 2002 - Plaintiff Brandstetter sends a form hereto attached as <u>EXHIBIT 54</u> to the Nevada Gaming Control Board to submit for an associated equipment license. Steven Campbell said that Plaintiff Brandstetter would need an associated equipment license to submit Slot-Sweepstakes!™ to the Nevada Gaming Control Board. Steven Campbell later submits the Slot-Sweepstakes!™  game under Wing Design's name before Plaintiff Brandstetter can get approved for an associated equipment license. Steven Campbell states that this will move the process along and later on he can shift it over to Plaintiff Brandstetter.

116.    On or about November 12, 2002 - BALLY signs a Non-Disclosure Agreement hereto attached as <u>EXHIBIT 55</u> with Plaintiff Brandstetter as president of J&S Gaming, Inc with regards to

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

the Slot-Sweepstakes!™ game. It was sent to Plaintiff Brandstetter by Monica Finta.

117.    On or about November 14, 2002 - Mickey Roemer sends an e-mail hereto attached as
EXHIBIT 56 to James Devlin confirming he received the FedEx sent by Plaintiff Brandstetter. This
FedEx included both of the non-published patent applications filed by Plaintiff Brandstetter and
James Devlin with the USPTO. By not knowing that Mickey Roemer had filed patent applications
claiming similar intellectual property, Plaintiff Brandstetter was duped into sharing confidential
information with BALLY vice president Mickey Roemer.

118.    On or about November 14, 2002 - Steven Campbell at Wing Design sends an e-mail
hereto attached as EXHIBIT 57 to Plaintiff Brandstetter. Steven Campbell explains that he spoke to
Robert Guinn at Ardent Gaming. Unknown to Plaintiff Brandstetter at this time is the fact that
Robert Guinn is a co-inventor with Mickey Roemer and William "Randy" Adams on the abandoned
'251 patent application and its replacement the '689 patent application.

119.    Hereto attached as EXHIBIT 58 are pages 175 and 176 of the deposition of Scott
Boyd, where Mr. Boyd testifies that Robert Guinn worked with him at Casino Data Systems (CDS)
in the 1994 to 1998 time period. Scott Boyd, Richard Schneider, and Robert Guinn all worked at
Casino Data Systems together. Mickey Roemer and Robert Guinn are both on the continuation
patent applications to the Randy Adams 6,113,098 patent.

120.    On or about December 2, 2002 - Scott Boyd files patent application number
10/308,768 for a "System for electronic game promotion." Claim 10 states, "wherein the award

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

comprises a drawing ticket." Jeffrey Jordon of Acres Gaming appears as a co-inventor on this patent application. Plaintiff Brandstetter believes Jeffrey Jordon was the CFO of Acres Gaming at this time. Plaintiff Brandstetter contends that Scott Boyd knowingly and willfully failed to disclose in the prior art the slot lottery game that he built for Plaintiff Brandstetter to the USPTO.

121.    On or about December 17, 2002 - The Nevada Gaming Control Board Audit Division sends a fax hereto attached as <u>EXHIBIT 59</u> to Plaintiff Brandstetter requesting additional information on its associated equipment submission. Steven Campbell of Wing Design tells Steven Brandstetter that the Slot-Sweepstakes!™ game was submitted as a promotional device, and that Plaintiff Brandstetter will no longer need an associated equipment license.

122.    On or about December 17, 2002 - Mickey Roemer sends an email hereto attached as <u>EXHIBIT 60</u> to James Devlin. Mickey Roemer suggests some sites where Plaintiff Brandstetter and James Devlin could do a field trial for Slot-Sweepstakes!™.

123.    On or about December 24, 2002 - James Devlin sends an email hereto attached as <u>EXHIBIT 61</u> to Plaintiff Brandstetter that is to be sent to Alfred Wilms. The email discusses the development process of Slot-Sweepstakes!™ and the interactions Plaintiff Brandstetter and James Devlin had with Mickey Roemer.

124.    On or about December 27, 2002 - Alfred Wilms sends an e-mail hereto attached as <u>EXHIBIT 62</u> to James Devlin that says, "Thanks for the preliminary information on Slot-Sweepstakes!"

COMPLAINT 33 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

125. On or about January 28, 2003 - BALLY sends Plaintiff Brandstetter a rejection letter hereto attached as <u>EXHIBIT 63</u>. It is signed by Michael Mitchell.

126. On or about January 29, 2003 - Mickey Roemer is listed as an inventor on patent application number 10/353,689 filed by Anchor Gaming that replaces the abandoned '251 patent application. William R. Adams (Randy Adams) is also listed as an inventor. Robert Guinn, Mike Maroney, and Lee E. Cannon are also listed as inventors.

127. Plaintiff Brandstetter contends that Mickey Roemer had worked for BALLY for over 2 years when the '689 patent application is filed. The '689 patent application by is filed January 29, 2003, exactly one day after BALLY sent a rejection letter to Plaintiff Brandstetter on January 28, 2003.

128. The '689 patent application states that, "This application is a continuation-in-part of U.S. patent application Ser. No. 09/157,993 filed Sep. 22, 1998, and now U.S. Pat. No. 6,113,098." The '098 patent is the Randy Adams patent that BALLY's CEO Bob Miodunski refers to in his November 23, 2000 email to James Devlin. The 1998 Adams patent does not state anything about a gaming device entering a slot player into a drawing.

129. Plaintiff Brandstetter asserts that by filing the now abandoned '251 patent application and its replacement the '689 patent application as continuations of the Adams '098 patent, defendants are attempting to pre-date the original provisional patent sent to the USPTO by Steven Brandstetter

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

on September 25, 1998 by 3 days.

130.    The '689 patent application is assigned to Anchor Gaming which is owned by defendant IGT.

131.    Plaintiff Brandstetter asserts that the BALLY/IGT cross-licensing agreement for their cashless patents from September 24, 1999 and the fact that BALLY's vice president Mickey Roemer is on the Anchor '689 patent application constitutes collusive anticompetitive activity by the defendants that gives rise the conspiracy alleged in this Complaint..

132.    Defendant IGT has a "Patent Recognition Program" as shown by a document hereto attached as <u>EXHIBIT 64</u> that states, "Eligible employees are compensated for their approved invention disclosures."

133.    Plaintiff Brandstetter contends that while Slot-Sweepstakes!™ game is being developed with Wing Design, the engineering firm Mickey Roemer introduced Plaintiff Brandstetter and James Devlin to, Mickey Roemer had already filed the abandoned '251 patent application and was working on the '689 patent application. Plaintiff Brandstetter contends that this deceptive activity by BALLY vice president Mickey Roemer is fraudulent on its face and designed to benefit both BALLY and IGT.

134.    On or about February 21, 2003 - Nevada Gaming Control Board member Scott Scherer sends a letter hereto attached as <u>EXHIBIT 65</u> to Wing Design stating that we are "hereby

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

authorized to proceed with a field trial of the Slot Sweepstakes system."

135.    On or about March 17, 2003 - Castaways signs an agreement hereto attached as EXHIBIT 66 to do the Slot-Sweepstakes!™ field trial. It is to begin on May 1, 2003.

136.    On or about April 2003 - Plaintiff Brandstetter speaks with Jeffrey Jordon from Acres Gaming. Somehow Jeffrey Jordon knows about the Slot-Sweepstakes!™ game. Jeffrey Jordan says he may be interested. Plaintiff Brandstetter and Jeffrey Jordon are to meet at Steve Campbell's office so he can view the game. Plaintiff Brandstetter and Jeffrey Jordon cannot find a compatible time to meet, so Jeffrey Jordon just shows up and Steve Campbell demonstrates the game for him. Jeffrey Jordon is on several patent applications with Scott Boyd where at least one of the claims is a slot machine that gives a slot player a ticket for a drawing which replicates the play of the slot lottery game.

137.    On or about April 2003 - Plaintiff Brandstetter helps install the Slot-Sweepstakes!™ units at the Castaways after finding out that Steven Campbell of Wing Design let his two employees; Kerry Nicponski and Tom Wing go. Steven Campbell said he would subcontract them if he needed their help.

138.    On or about April 25, 2003 - Plaintiff Brandstetter sent a FedEx to Thomas Mathews, Charles Mathewson, G. Thomas Baker, and Robert Bittman. They are the top 4 executives at IGT. Enclosed in the FedEx is an invitation to see the Slot-Sweepstakes!™ game at the Castaways Casino on Boulder Highway. Copies of which are hereto attached as EXHIBIT 67.

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

139.     On or about May 2003 - The Bingo Bugle Nevada Edition prints a Castaways advertisement hereto attached as <u>EXHIBIT 68</u> for the Slot-Sweepstakes!™ game on page 9.

140.     On or about May 1, 2003 - The Slot-Sweepstakes!™ field trial does not begin because of wiring problems at the Castaways Casino.

141.     On or about May 5, 2003 - The Slot-Sweepstakes!™ field trial begins at the Castaways casino on Boulder Highway in Las Vegas, Nevada

142.     On or about May 6, 2003 - The law firm of Perkins Coie on behalf of Acres Gaming sends Plaintiff Brandstetter a letter hereto attached as <u>EXHIBIT 69</u>. This letter states, "we are familiar with the operation of Slot-Sweepstakes!", and it informs Plaintiff Brandstetter that Slot-Sweepstakes!™ may be infringing on some of Acres Gaming's patents.

143.     Plaintiff Brandstetter's patent attorney Phil Weiss responds to the Perkins Coie letter by saying that Slot-Sweepstakes!™ networks its own boxes whereas the Acres patents refer to networking the slot machines.

144.     On or about May 31, 2003 - The Grand Prize Drawing for the Slot-Sweepstakes!™ game is held at the Castaways and it draws a very large crowd.  Pictures of the game in the Castaway's Casino are hereto attached as <u>EXHIBIT 70</u>.

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

145.    On or about June 2003 - Plaintiff Brandstetter is informed that the field trial must continue because of the problems incurred with the game during the field trial. Plaintiff Brandstetter works a deal with the Castaways Casino to hold weekly Slot-Sweepstakes!™ drawings instead of nightly drawings. Problems include tickets not printing, counters increase for no reason, and the ticket count was significantly different from the Castaways actual slot handle. One night two people had the winning ticket numbers. The Slot-Sweepstakes!™ database was not supposed to repeat any ticket numbers within a particular drawing. Despite repeated efforts by Plaintiff Brandstetter to get the problems corrected, Steven Campbell of Wing Design never corrected these problems.

146.    On or about June 4, 2003 - Castaways manager Rick Scheer sends an e-mail hereto attached as **EXHIBIT 71** to Plaintiff Brandstetter stating the issues with the Slot-Sweepstakes!™ system. The issues according to the email were as follows:

1-  Ticket Accountability not matching coin-in.

2-  Communication issues with printing tickets (causing #1)

3-  Daily System reboots required.

4-  Sweepstakes count up meter increments when the machines power is turned on and off.

5-  When the Crystal Report writer is extracting data the system goes down. According to Steve the system is off line when data is being extracted. He will talk to Steve Campbell and clarify the process.

6-  Name being captured for the drawings and for the tickets. This will not be available for June. Steve will advise as to when they will have that revision complete.

147.    On or about June 2003 - The Castaways Casino files for bankruptcy but agrees to

finish the Slot-Sweepstakes!™ field trial which runs until July 2, 2003.

148.    On or about June 30, 2003 - Steven Campbell of Wing Design informs Plaintiff Brandstetter by email hereto attached as <u>EXHIBIT 72</u> that, "Wing Design has no clients right now. I am closing the doors in a week or two."

149.    On or about July 2003 - Slot Manager Magazine published an article titled, "Castaways starts value added Slot Sweepstakes" that is written by Marian Green. The article hereto attached as <u>EXHIBIT 73</u> discusses the Slot-Sweepstakes!™ game at the Castaways Casino.

150.    On or about July 2, 2003 - The final Slot-Sweepstakes!™ drawing occurs and the field trial ends.

151.    On or about July 2003 - Plaintiff Brandstetter and James Devlin meet with WMS Gaming to discuss the Slot-Sweepstakes!™ game.

152.    On or about August 3, 2003 - Steven Campbell sends an email to Plaintiff Brandstetter hereto attached as <u>EXHIBIT 74</u> where he states that "I sent e-mails to Mickey about the system being in the Castaways."

153.    On or about August 4, 2003 - Steven Campbell sends an email to Plaintiff Brandstetter hereto attached as <u>EXHIBIT 75</u>. It says that he sent an email to Mickey Roemer that the system has been approved in Nevada.

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

154.    On or about August 6, 2003 - The Nevada Gaming Control Board sent a letter hereto attached as <u>EXHIBIT 76</u> that says the field trial for the Slot Sweepstakes system has concluded. It mentions some of the issues during the field trial. It encourages a system upgrade that Steven Campbell of Wing Design discussed with the staff of the Nevada Gaming Control Board. Steven Campbell refused to make any system upgrades.

155.    On or about September 29, 2003 - Plaintiff Brandstetter sends a certified letter hereto attached as <u>EXHIBIT 77</u> with a CD-Rom that shows a demonstration of the Slot-Sweepstakes!™ game to Terrence W. McMillin Chief Intellectual Property Counsel at IGT. Mr. McMillin requested in a prior fax to direct all communication him. There was no reply.

156.    On or about October 6, 2003 - The Wall Street Transcript published a 4 page interview hereto attached as <u>EXHIBIT 78</u> with Plaintiff Brandstetter the president of J&S Gaming, Inc. in its Gaming Issue.

157.    On or about October 27, 2003 - IGT buys Acres Gaming. Prior to buying Acres Gaming, IGT owned a significant part of the company.  On January 28, 1997 IGT had purchased 519,481 shares of Acres Series A Convertible Preferred stock which could be converted to 2,948,463 shares of Acres common stock.

158.    On or about October 31, 2003 - Scott Boyd is listed on a patent application titled, "Player specific rewards." Also listed as inventors are Richard J. Schneider, Jeffrey R. Jordan,

COMPLAINT 40 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

Kevan Wilkins, Shannon Mason, Keith Russell, and Matt Glazier. Claims 22, 23 and 26 discuss a bonus game initiating a cash drawing type and a number of cash drawing tickets. The patent application number is 10/699,260. Scott Boyd knowingly and willfully failed to include the slot lottery game he built for Plaintiff Brandstetter in the prior art disclosure of this patent application to the USPTO.

159.    On or about November 18, 2003 - Plaintiff Brandstetter sends a letter hereto attached as <u>EXHIBIT 79</u> via FedEx to Marc McDermott of the Nevada Gaming Control Board requesting information on the approval of the Slot-Sweepstakes!™ system. There was no reply to the letter.

160.    On or about June 7, 2004 - Steven Campbell signs a notarized letter hereto attached as <u>EXHIBIT 80</u> stating that "The Slot Sweepstakes system is owned by J&S Gaming, as well as the rights to sell to any non-restricted casinos in the state of Nevada."

161.    On or about June 2007 - Plaintiff Brandstetter and James Devlin see a sweepstakes game based on playing the slot machines run at the Monticello Raceway and Casino. The brochure from the Monticello Raceway and Casino was attached previously as exhibit 2. The lady at the promotions booth said she believed it was BALLY Power Sweepstakes because the promotion was only on BALLY slot machines. The game only plays on BALLY Machines with the player tracking card inserted. As the slot player plays the slot machine, a counter showing points earned is displayed on the screen. When the counter hits 5, a ticket prints behind the promotions booth, and an employee takes that ticket and places it in a barrel that is on display. On the last Saturday of the month a drawing was held using the tickets in the barrel. This was the first time that Plaintiff Brandstetter

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

discovered a slot machine game that replicates the play of the slot lottery game and the Slot-Sweepstakes!™ game.

162. Upon information and belief, BALLY has a game that prints a drawing ticket directly from a slot machine. A copy of a BALLY drawing ticket and a Plaintiff Brandstetter Slot-Sweepstakes! ticket are shown in a document hereto attached as EXHIBIT 81.

163. On or about 2007 - Mickey Roemer leaves BALLY Gaming and starts Roemer Gaming, LLC. The website is www.roemergaming.com. The business plan of Roemer Gaming appears to be Mr. Roemer taking new game ideas from other people and introducing them to his contacts in the gaming industry.

164. On or about July 16, 2007 - Roemer Gaming LLC, led by gaming industry veteran Mick Roemer, announced it has entered into a Third-Party Development agreement with BALLY Technologies, Inc.

165. On or about 2008 - Mickey Roemer and Steven Campbell are principals of a gaming company called CasinoVision.

166. On or about April 22, 2008 - Las Vegas Gaming, Inc. and United Coin Launch the Million Dollar Ticket game. The game uses Defendant Las Vegas Gaming's RoutePromo system and appears to replicate the play of the Slot-Sweepstakes!™ game. The software of Las Vegas Gaming, Inc. gets licensed by defendant IGT.

COMPLAINT 42 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

167.    On or about August 11, 2008 - Plaintiff Brandstetter was notified that the patent application titled, "Coin counter and ticket dispenser for a game machine" was granted in Australia. A copy of a document showing this notification is hereto attached as EXHIBIT 82.

168.    On September 15, 2008 - Richard A. Schonfeld, Esq. of the law firm Chesnoff & Schonfeld filed a lawsuit on behalf of Steven Brandstetter and J&S Gaming, Inc. in the Eighth Judicial District Court Clark County, Nevada. The case number is 08a571641. The lawsuit is titled Steven Brandstetter and J&S Gaming, Inc. vs. BALLY Gaming, Inc., International Game Technology, Acres Gaming, Inc., Las Vegas Gaming, Inc., Scott Boyd, and Mickey Roemer. The causes of action include breach of contract, misrepresentation, misappropriation, violation of the Nevada Uniform Trade Secrets Act, common law conversion, breach of fiduciary duty, and unjust enrichment. This lawsuit is now Nevada Supreme Court case number 54229.

169.    Plaintiff Brandstetter contends that it was through the sworn testimony of Mickey Roemer and Scott Boyd during their depositions that the alleged fraudulent activity and conspiracy that has given rise to the causes of action in this Complaint was discovered. This fraudulent activity is currently ongoing in the USPTO and in the casino marketplace.

VI.     FIRST CAUSE OF ACTION
(Fraud by BALLY -- N.Y. GBS. LAW § 349 and Title 18 U.S.C., §1341)

170.    Plaintiff repeats and re-alleges all of the allegations set forth in the paragraphs above as though they are set forth herein.

COMPLAINT 43 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

171. Plaintiff has provided facts supported by documentary evidence to show the specific time and place as well as the people involved in the alleged fraud and conspiracy to state a claim to relief that is plausible to satisfy the pleading requirement under New York CPLR 3016(b) and FRCP Rule 9.

172. That defendants alleged unlawful fraudulent conduct and conspiracy over a several period has caused injury to the competitive slot machine and casino marketplace throughout the United States and in all of the markets where the defendants conduct business.

173. The alleged fraudulent conduct of the defendants against the plaintiff and the United States Patent And Trademarks Office set forth in this Complaint constitute unfair business practices.

174. Plaintiff has suffered financial injury due to the defendants alleged unlawful conduct detailed in the paragraphs above.

VII.     SECOND CAUSE OF ACTION
(Fraud by IGT -- N.Y. GBS. LAW § 349 and Title 18 U.S.C., §1341)

175. Plaintiff repeats and re-alleges all of the allegations set forth in the paragraphs above as though they are set forth herein.

176. Plaintiff has provided facts supported by documentary evidence to show the specific time and place as well as the people involved in the alleged fraud and conspiracy to state a claim to

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

relief that is plausible to satisfy the pleading requirement under New York CPLR 3016(b) and FRCP Rule 9.

177.   That defendants alleged unlawful fraudulent conduct and conspiracy over a several period has caused injury to the competitive slot machine  and casino marketplace throughout the United States and in all of the markets where  the defendants conduct business.

178    That the alleged fraudulent conduct of the defendants against the plaintiff and the United States Patent And Trademarks Office set forth in this Complaint constitute unfair business practices.

179.   Plaintiff has suffered financial injury due to the defendants alleged unlawful conduct detailed in the paragraphs above.

### VIII.       THIRD CAUSE OF ACTION
(Conspiracy BALLY and IGT -- Title 18 U.S.C., Chapter 63, §1349)

180.   Plaintiff repeats and re-alleges all of the allegations set forth in the paragraphs above as though they are set forth herein.

181.   Plaintiff has provided documentary evidence and corroborating sworn testimony to show the alleged conspiracy between BALLY and IGT. The fact that Mickey Roemer, while employed by BALLY for over 2 years is listed as an inventor on the January 29, 2003 patent application owned by IGT, shows strong common motive to conspire.

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

182. Plaintiff has provided an important email which links BALLY and Acres (IGT) in their interactions with the plaintiff. BALLY president and CEO Robert Miodunski sent an email (presented as exhibit 18) informing Plaintiff Brandstetter and James Devlin that BALLY was going to do the slot lottery game with Acres Gaming, which is now IGT.

183. The alleged fraudulent conduct of the defendants against the plaintiff and the United States Patent And Trademarks Office set forth in this Complaint constitute unfair business practices.

184. Plaintiff has suffered financial injury due to the defendants alleged unlawful conduct detailed in the paragraphs above.

IX.     FOURTH CAUSE OF ACTION
(Unjust Enrichment BALLY and IGT)

185. Plaintiff repeats and re-alleges all of the allegations set forth in the paragraphs above as though they are set forth herein.

186. The patents and patent applications owned by IGT and cross licensed to BALLY have a significant monetary value. This intellectual property was unfairly obtained with repeated failure by the defendants to disclose to the USPTO as material prior art their knowledge plaintiffs provisional application and of the slot lottery and Slot-Sweepstakes!™ games.

COMPLAINT 46 of 48

187. With BALLY having BALLY Power Sweepstakes and IGT having the ability to do drawings from its IGT Advantage suite of products, both replicating the play of the ideas put forth by Plaintiff Brandstetter in his 1998 provisional patent application and the slot lottery and Slot-Sweepstakes!™ games, defendants are being unjustly enriched from their fraudulent and collusive behavior.

## X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be rendered in his favor as follows:

188. That defendants be ordered to turn over all patents and patent applications filed after their alleged fraudulent conduct began with the plaintiff, where any claim, object, or embodiment allows the player of a gaming device to receive a ticket that enters that player into a drawing;

189. To award plaintiff general and special damages in amounts sufficient to compensate it for BALLY and IGT's wrongful conduct;

190. To award plaintiff damages for lost revenue due to the unlawful conduct of the defendants;

191. To award plaintiff punitive and exemplary damages according to proof;

COMPLAINT 47 of 48

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

192.   To award plaintiff for all such other and further relief as the Court deems just and proper.


## XI.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands as per Rule 38 of the Federal Rules Of Civil Procedure that all of the triable issues contained herein be tried in a jury trial.


**DATED** this 31st day of May, 2011.

Steven Brandstetter (pro se)
12 May Hill Lane
Dix Hills, NY 11746
Phone: (516) 655-6926

Steven Brandstetter
12 May Hill Lane
Dix Hills, NY 11746

COMPLAINT 48 of 48